# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MUSSA ALI**, | Case No. 3:12-cv-01764-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CARNEGIE INSTITUTION OF WASHINGTON**, and **UNIVERSITY OF MASSACHUSETTS**, | |
| Defendants. | |

Joseph W. Berenato III, and Steven v. Kelber, Berenato & White, LLC, 6550 Rock Spring Drive, Suite 240, Bethesda, MD 20817. Joel P. Leonard, and John D. Ostrander, Elliott, Ostrander & Preston, P.C., 707 SW Washington Street, Suite 1500, Portland, OR 97205. Attorneys for Plaintiff.

Kurt G. Calia, Covington & Burling LLP, 333 Twin Dolphin Drive, Suite 700, Redwood Shores, CA 94065. Alexa R. Hansen, and Nathan E. Shafroth, Covington & Burling, LLP, 1 Front Street, Floor 35, San Francisco, CA 94111. Kelly M. Jaske, Jaske Law LLC, 521 SW Clay Street, Suite 209, Portland, OR 97201. Attorneys for Defendants.

**Michael H. Simon, District Judge**.

Plaintiff brings this lawsuit to correct the inventorship of five issued patents related to gene silencing. For the reasons stated below, Defendants' Motion to Dismiss (Dkt. 18) is GRANTED IN PART AND DEFERRED IN PART, Plaintiff's Motion for Jurisdictional Discovery (Dkt. 30) is GRANTED IN PART AND DENIED IN PART AND STAYED, and Plaintiff's request for a Rule 16 conference (Dkt. 33) is GRANTED.

## BACKGROUND

This case arises out of Plaintiff Mussa Ali's claim that he was erroneously omitted as a named inventor on five patents: U.S. Patent Nos. 6,506,559; 7,538,095; 7,560,438; 7,622,633 and 8,283,329. Am. Compl. ¶ 3, 25-26. Defendants Carnegie Institute of Washington ("Carnegie") and University of Massachusetts ("UMass") are owners, by assignment, of the patents at issue. Am. Compl. ¶ 3-4.

Defendants have filed a motion to dismiss or strike Plaintiff's First Amended Complaint ("FAC"). Dkt. 18. They argue that the Court lacks subject matter jurisdiction over the action based on the sovereign immunity of Defendant UMass and its status as a "required party." In the alternative, Defendants contend that the Court lacks personal jurisdiction over all Defendants. Before Plaintiff's response was due, Plaintiff filed a motion seeking jurisdictional discovery on both aspects of Defendants' motion to dismiss. Dkt. 30. Simultaneously, Plaintiff filed a request for a Rule 16 Conference to discuss and schedule any allowed jurisdictional discovery. Dkt. 33. Defendants oppose Plaintiff's request for a Rule 16 conference, urging the Court to decide their motion to dismiss without permitting discovery. Dkt. 34.

On April 9, 2013, the Court issued a Minute Order stating that it was considering ordering a stay of this litigation until the U.S. Court of Appeals for the Federal Circuit issued its opinion in a pending case that appears to involve similar factual and legal issues. Dkt. 35

referring to *University of Utah v. Max-Planck*, No. 12-1540 (Fed. Cir. 2013). The Court invited

any party wishing to be heard on that question to file a motion within 14 days. *Id.* All parties

objected to the Court's contemplated stay, arguing that the cited case would not be dispositive or

the pending motion to dismiss could be decided on alternative grounds. Dkts. 39, 40. Since that

time, Defendants filed a memorandum arguing that Plaintiff's failure substantively to respond to

Defendants' motion to dismiss is sufficient grounds for the Court to grant that motion. Dkt. 37.

Defendants also filed their opposition to Plaintiff's request for jurisdictional discovery. Dkt. 38.

## STANDARDS

In patent cases, Federal Circuit law governs the relevance of a request for jurisdictional

discovery. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d

1315, 1323 (Fed. Cir. 2005); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558,

1564 (Fed. Cir. 1994). Whether jurisdictional discovery is warranted, however, is a question

answered by the law of the regional circuit. *See Chi Mei*, 395 F.3d at 1323 (relying on regional

circuit law to determine whether the party seeking discovery "made a sufficient threshold

showing"); *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed.

Cir. 2009) ("We review the district court's denial of discovery, an issue not unique to patent law,

for abuse of discretion, applying the law of the regional circuit.").

Because there is no statutorily proscribed method for resolving jurisdictional disputes

before trial, the mode of resolution is left in the discretion of the trial court. *See Data Disc, Inc.

v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307

U.S. 66, 71-72 (1939)). If a court limits the presentation of relevant evidence to "affidavits plus

discovery materials," as opposed to holding an evidentiary hearing, then the plaintiff "must make

only a prima facie showing of jurisdictional facts through the submitted materials in order to

avoid a defendant's motion to dismiss." *Id.* In considering whether to grant or deny jurisdictional

discovery, a trial court has broad discretion. *Id.* Generally, discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). A court may deny jurisdictional discovery unless the denial "will result in 'actual and substantial prejudice to the complaining litigant' (e.g., 'a reasonable probability that the outcome would have been different had discovery been allowed')." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1370 (Fed. Cir. 2007) (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).

## DISCUSSION

Defendants assert two independent grounds for complete dismissal of this case. First, Defendants argue that UMass is entitled to sovereign immunity and that UMass is a required party that cannot be joined; thus, the case must be dismissed, Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(7). Second, Defendants argue that the Court cannot properly exercise personal jurisdiction over them. In the alternative to these two arguments for complete dismissal, Defendants contend that Plaintiff's second count and alternative second count must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response to Defendants' motion to dismiss, Plaintiff seeks discovery related to Defendants' motion and a Rule 16 conference. Except in part, Plaintiff has not yet responded to the merits of Defendants' motion.

### A.  UMass's Sovereign Immunity

Defendants argue that UMass should be dismissed because it is immune from suit under the Eleventh Amendment as an arm of the state of Massachusetts. Plaintiff opposes Defendants' contention, arguing that discovery is necessary to determine whether UMass is entitled to immunity or if it has waived its sovereign immunity.

The Eleventh Amendment provides sovereign immunity to states from suits brought in federal court.[1] *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997). "[A] federal court has subject matter jurisdiction to hear cases involving federal law, but the Eleventh Amendment gives the state 'a sovereign immunity from suit.'" *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1340 (Fed. Cir. 2006) (quoting *Coeur d'Alene Tribe*, 521 U.S. at 267). Sovereign immunity applies to actions brought under the patent laws of the United States. *See generally Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999) (holding that Congress did not properly abrogate states' Eleventh Amendment immunity from suits under the Patent Act). A state, however, may waive its immunity from suit under two circumstances: "when the state makes a 'clear declaration' that it intends to waive immunity, such as by statute, or when the state voluntarily invokes federal jurisdiction." *Tegic Commc'ns*, 458 F.3d at 1340 (internal citations omitted) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990); *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273 (1906)).

The Eleventh Amendment only applies to states and state officials; it does not apply "to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). If a defendant is an "arm of the state," then it is entitled to Eleventh Amendment immunity from suit. *See id.* To determine whether a public entity is an arm of the state, a court looks at five factors:

> (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be

---

[1] Because sovereign immunity is not unique to patent law, the Federal Circuit applies the law of the regional circuit court. *See Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006) (applying Ninth Circuit law to a claim of immunity under the Foreign Sovereign Immunities Act).

sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity.

*Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003) (internal quotation marks and citation omitted). "To determine these factors, the court looks to the way state law treats the entity." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991) (quoting *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 (1989)). The party asserting sovereign immunity has the "burden of proving the facts that establish its immunity." *ITSI T.V. Prods., Inc. v. Agric. Assocs.*, 3 F.3d 1289, 1292 (9th Cir. 1993). The Ninth Circuit has noted, however, that immunity will be in serious dispute "only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state." *Id.*

Notwithstanding Plaintiff's arguments to the contrary, the five factors identified generally do not require the presentation of extraneous evidence. *See, e.g.*, *ITSI*, 3 F.3d at 1292-94 (deciding the defendant was not an arm of the state with reference to various portions of the California Code); *Durning*, 950 F.2d at 1424 (deciding the defendant was not an arm of the state with reference to Wyoming statutes and case law). This issue can be decided solely with reference to Massachusetts statutes and the consensus of Massachusetts courts, which conclude that UMass is entitled to sovereign immunity.

The first factor—whether a monetary judgment for the plaintiff "would have to be satisfied out of public funds from the state treasury"—is the most important. *See Durning*, 950 F.2d at 1424 (relying on *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). With limited exceptions not relevant here, Massachusetts indemnifies members of UMass's Board of Trustees "for any claim arising out of any official judgment, decision, or conduct of said member." Mass. Gen. Laws ch. 75, § 1A; *see also Hannigan v. New Gamma-Delta Chapter of Kappa Sigma*

*Fraternity, Inc.*, 367 Mass. 658, 659, 327 N.E.2d 882, 883 (1975) (holding the trustees "are one and the same party, namely the Commonwealth of Massachusetts"). Thus, the first factor favors a finding sovereign immunity for UMass.

The second factor is whether the entity performs central government functions. The Ninth Circuit has recognized that "public education is a central government function." *See Durning*, 950 F.2d at 1426 (collecting cases). It is undisputed that UMass's central function is public education. *See* Mass. Gen. Laws ch. 75, § 1 (creating UMass "as a public institution of higher learning"). Thus, the second factor favors sovereign immunity.

The third factor is whether the entity may sue or be sued. The Massachusetts Supreme Judicial Court has recognized that "[f]or purposes of the Commonwealth's consent to be sued, the University of Massachusetts and the Commonwealth are one and the same." *Wong v. Univ. of Mass.*, 438 Mass. 29, 36, 777 N.E.2d 161, 167 (2002) (quotations and citation omitted). Thus, the third factor favors sovereign immunity.

The fourth factor is whether the entity can take property in its own name. Generally, UMass's ability to manage its property is limited, doing so only "on behalf of the commonwealth." Mass. Gen. Laws ch. 75, § 12; *see also* Mass. Gen. Laws ch. 75, § 25 (granting the trustees limited powers to convey land "in the name of and for the commonwealth"). Thus, the fourth factors favors sovereign immunity.

The fifth and final factor is whether the entity has its own independent corporate identity. As mentioned above, the Massachusetts courts consider UMass and the commonwealth to be "one and the same." *See Wong*, 438 Mass. at 36, 777 N.E.2d at 167. Indeed, Massachusetts courts explicitly hold that UMass, as the alter ego of the commonwealth, is entitled to sovereign immunity. *See, e.g.*, *Cameron Painting, Inc. v. Univ. of Mass.*, 83 Mass. App. Ct. 345, 347, 983

N.E.2d 1210, 1213 (2013) ("[A]s a component of the Commonwealth, the University cannot be sued unless the Commonwealth has consented to a waiver of its sovereign immunity.") Because all five factor point in the same direction, the Court concludes that UMass is an arm of the state of Massachusetts and is entitled to sovereign immunity from suit. [2]

Plaintiff also asserts the possibility of UMass's waiver of sovereign immunity as a basis for granting relevant discovery. As noted above, a state waives sovereign immunity in only two instances: (1) a state's voluntarily invocation of the jurisdiction of a federal court; or (2) a state's "clear declaration" that it intends to submit itself to the jurisdiction of a federal court. *See Coll. Sav. Bank*, 527 U.S. at 675-76. "[A]ny waiver of sovereign immunity by a state must be express and voluntary, and cannot be implied or constructive." *State Contracting & Eng'g Corp. v. State of Fla.*, 258 F.3d 1329, 1336 (Fed. Cir. 2001) (citing *Coll. Sav. Bank*, 527 U.S. at 682).

Plaintiff cites *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, 455 F.3d 1364 (Fed. Cir. 2006), to support his argument that a state-patent owner may waive sovereign immunity by licensing or threatening to enforce its patents. Pl.'s Disc. Br. at 5. *Intel*, however, is inapposite because the immunity at issue in that case was conferred by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, not by the Eleventh Amendment. *Id.* at 1366. As the court noted, FSIA contains an immunity exception for foreign sovereigns engaged in

---

[2] The cases cited by Plaintiff are inapplicable. In *Comeau v. Volusia Cnty.*, 609-CV-1907-ORL28KRS, 2010 WL 2293291 (M.D. Fla. June 7, 2010), the court, relying on a Florida Supreme Court case, held that determining whether "a governmental action qualifies as a discretionary governmental process," which Florida exempted from a waiver of immunity, was a "fact-intensive inquiry." *Id.* at *2 (internal quotations omitted) (citing *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So.2d 1010, 1919 (Fla. 1979)). In *Walker v. City of Waterbury*, 228 F.R.D. 118 (D. Conn. 2005), the court declined to rule whether a non-party was entitled to sovereign immunity because the non-party, not the plaintiff, would "be in a far better position . . . to bring to the Court's attention all relevant facts." *Id.* at 120-21.  None of the unique circumstances present in these cited cases apply here; instead, UMass falls squarely within the definition of an "arm of the state" as elucidated by the five-factor test.

"commercial activity carried on in the United States." *Id.* at 1369 (quoting 28 U.S.C.

§ 1605(a)(2)). The FSIA's legislative history emphasizes Congress's attempt to "codify the

so-called 'restrictive' principle of sovereign immunity, . . . [wherein] the immunity of a foreign

state is 'restricted' to suits involving a foreign state's public acts . . . and does not extend to suits

based on its commercial or private acts . . . ." *Id.* (citing H.R.Rep. No. 94-1487, at 7 (1976),

*reprinted in*, 1976 U.S.C.C.A.N. 6604, 6605). As the Supreme Court has made clear, however,

Eleventh Amendment sovereign immunity cannot be characterized as "restrictive." *See, e.g.*,

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 686 n.4

("[S]tate sovereign immunity, unlike foreign sovereign immunity, is a *constitutional* doctrine

that is meant to be both immutable by Congress and resistant to trends."). Except for the specific

methods of waiver previously identified, the Eleventh Amendment does not contain exceptions

for the commercial activity of states. As such, the information that Plaintiff seeks about UMass's

use of the patents in suit would not support a waiver of sovereign immunity.

Even assuming that UMass litigates or licenses the patents in suit, UMass has not

"invoked" the jurisdiction of *this* federal court by engaging in "classic litigation tactics . . . [with]

the patents in suit" or by participating in an *inter partes* reexamination. *See* Pl.'s Disc. Br. at 6. A

state's filing of a patent infringement suit does not effectuate a complete waiver of sovereign

immunity, even with respect to the infringed patents. *See Tegic Commc'ns*, 458 F.3d at 1341-43.

Any such waiver is limited to the complete adjudication of the state's suit, including any

compulsory counterclaims, in the state's chosen forum. *See id.* The state's suit does not,

however, waive sovereign immunity from a suit on the same patent filed in a different court by a

different party. *See id.* (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613,

620 (2002)) ("While waiver in the litigation context focuses on the litigation act, the waiver must

nonetheless be "clear.'"). Thus, no evidence of any litigation by UMass of the patents in suit,

assuming that such litigation exists, would effectuate any waiver of immunity sufficient to permit

Plaintiff's suit in this district. Further, to the extent that UMass may have participated in the *inter*

*partes* reexamination of one of the relevant patents, that reexamination, at most, would have

waived UMass's immunity to any review of that decision. *See Vas-Cath, Inc. v. Curators of*

*Univ. of Mo.*, 473 F.3d 1376, 1384 (Fed. Cir. 2007) ("[W]hen the University initiated and

participated in the interference, its participation included the ensuing statutory review

procedures; the University cannot invoke Eleventh Amendment immunity, after it prevailed, to

shield the agency decision from review.").

Because none of the theories advanced by Plaintiff can demonstrate that UMass is not

entitled to, or has waived, state sovereign immunity, Plaintiff's proposed discovery is not

relevant. Accordingly, Plaintiff's Motion for Jurisdictional Discovery is denied with respect to

any issues relating to sovereign immunity. Further, there does not appear to be any dispute in the

case law that UMass is an arm of the state of Massachusetts entitled to sovereign immunity; thus,

UMass is dismissed from this lawsuit.[3]

---

[3] The Court recognizes that Plaintiff has not been heard on the legal issues surrounding
UMass's status as an arm of the state. The Court has independently researched the issues in
granting this portion of Defendants' motion and concludes the dictates of sovereign immunity
and efficiency counsel the immediate dismissal of UMass. If, however, Plaintiff believes the
Court's conclusion on this point is in error, then Plaintiff is given leave to file a motion to
reconsider within 14 days stating the *legal* basis for his contrary conclusion.

Plaintiff also argues that discovery is necessary so he can determine the appropriate
UMass officers to sue pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff's citation to
*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 881 F. Supp.
2d 151 (D. Mass. 2012), appears to provide that information. In *Univ. of Utah*, instead of UMass,
the plaintiff filed suit against the "President of the University of Massachusetts . . . Executive
Vice President and Chief Operating Officer of the University of Massachusetts . . . Senior Vice
President for Administration, Finance, & Technology and University Treasurer of the University
of Massachusetts . . . and . . . Executive Director, Office of Technology Management of the

**B.  Personal Jurisdiction**

Defendants also argue that this case should be dismissed because they are not subject to personal jurisdiction in this forum. Plaintiff responds that Defendants' actions and use of the patents in suit, primarily through licensing, are sufficient to confer personal jurisdiction. He requests related discovery to support his contentions.

To assert personal jurisdiction over an out-of-state defendant in a patent-related dispute, a court must resolve two inquiries: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). In this case, these inquiries merge because Oregon's long-arm statute extends jurisdiction "to the outer limits of due process." *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982); *accord Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process.").

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." [4] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation

_____

University of Massachusetts," each in their official capacities. *Id.* at 151. If Plaintiff so chooses, he is given leave to amend his complaint to include some or all of these officials. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

[4] The Federal Circuit has noted that because a federal court's subject matter jurisdiction to hear patent disputes is based on federal question jurisdiction, 28 U.S.C. § 1331, rather than diversity jurisdiction, 28 U.S.C. § 1332, the Due Process Clause of the Fifth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, governs the court's assertion of personal jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002); *see generally Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its

marks and citation omitted). To satisfy due process, the plaintiff must show that the defendant

has "certain minimum contacts with [the forum state] such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945). Under the "minimum contacts" test, "a defendant may be subject to

either specific jurisdiction or general jurisdiction." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232

F.3d 1369, 1375 (Fed. Cir. 2000). A court has general personal jurisdiction over an out-of-state

defendant when that defendant has "continuous and systematic general business contacts" with

the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). A

court has specific personal jurisdiction where "the defendant has purposefully directed his

activities at residents of the forum, and the litigation results from alleged injuries that arise out of

or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks and

citations omitted). Thus, in "contrast to general, all-purpose jurisdiction, specific jurisdiction is

confined to adjudication of issues deriving from, or connected with, the very controversy that

establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846,

2851 (2011) (internal quotation marks and citation omitted).

　　In this case, the parties disagree about the extent to which actions of related third-

parties—primarily licensees and co-inventors—can subject an entity to personal jurisdiction in a

forum. Plaintiff's primary contentions are that Defendants' use of the patents through licensing

and the actions of the patents' listed inventors subject Defendants to personal jurisdiction in

---

progeny were decided under the Due Process Clause of the Fourteenth Amendment. *See id.*
at 311 (the question "for decision [is] whether, within the limitations of the due process clause of
the Fourteenth Amendment, appellant, a Delaware corporation, has by its activities in the State
of Washington rendered itself amenable to proceedings in the courts of that state"). Nonetheless,
the Federal Circuit applies the standards developed in *Int'l Shoe* and its progeny "to Fifth
Amendment due process cases arising under the federal patent laws." *Deprenyl Animal Health*,
297 F.3d at 1350.

Oregon. As a basis for general personal jurisdiction, Plaintiff asserts that Defendants support research conducted in Oregon.

Personal jurisdiction cannot be based on "the 'unilateral activity of another party or a third person,'" *Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopteros Nacionales*, 466 U.S. at 417). Jurisdiction may be appropriate, however, when a party's contacts with a forum resident create "continuing obligations" between the parties. *See id.* at 475-76. The mere existence of a licensor-licensee relationship is insufficient, without more, to subject the licensor to personal jurisdiction in a forum where its licensee has sufficient contacts. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("[D]oing business with a company that does business in Minnesota is not the same as doing business in Minnesota."). Indeed, due process requires more than "contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there." *See Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). Where a defendant-licensor grants an exclusive license to a third-party doing business in a forum, a court must give "close examination" to the license agreement. *Id.* Personal jurisdiction is proper in the third party-licensee's forum where the license gives the defendant-licensor "the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Id.*

In declarations submitted in support of their motion to dismiss, Defendants aver that no licensee of the patents in suit is domiciled in Oregon. *See* Allen Decl., Dkt. 20, ¶ 6; Williams Decl., Dkt. 21, ¶ 6. Plaintiff argues that there is evidence that product derived from the patents in suit are manufactured and sold in Oregon. *See, e.g.*, Kelber Decl., Dkt. 32, Exs. B. Defendants contend that any such licenses would be legally insufficient to support jurisdiction, but their

argument omits any discussion of the nature of the licenses. Further, the distinction between non-exclusive and exclusive licenses is not as clear as Defendants suggest. *See generally Breckenridge*, 444 F.3d at 1366 (delineating between "mere attempts to license the patent at issue" and exclusive licenses, without discussing non-exclusive licenses). What is clear, however, is that the nature of the relationship between Defendants and their licensees in Oregon, if any, may be relevant to the resolution of the question of personal jurisdiction. *See Digeo, Inc.*, 505 F.3d at 1370.

Thus, the Court will permit Plaintiff to conduct limited discovery regarding this issue of personal jurisdiction. To that extent, the Court GRANTS IN PART Plaintiff's motion for discovery related to personal jurisdiction. Dkt. 30. Given the potentially dispositive nature of the still-pending Rule 12(b)(7) motion, however, which can independently resolve this case, the grant of this discovery is stayed. *See, e.g.*, *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) (affirming a district court's stay of discovery when there was no indication "the discovery sought was relevant to whether or not the court has subject matter jurisdiction"); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming a district court's stay of discovery when the complaint "did not raise factual issues that required discovery for their resolution").

Finally, the Court GRANTS Plaintiff's request for a Rule 16 conference. Dkt. 33. The Courtroom Deputy will contact the parties to arrange for a telephone conference for that purpose.

## CONCLUSION

Defendants' Motion to Dismiss (Dkt. 18) is GRANTED IN PART AND DEFERRED IN PART; Defendant University of Massachusetts is DISMISSED, and the Court's ruling on the remaining issues contained in Defendants' motion is DEFERRED. Within 14 days, Plaintiff may

file a motion for reconsideration as provided for in footnote 3 of the Court's Opinion and Order. Also within 14 days, Plaintiff shall file his response to Defendant Carnegie Institution of Washington's Motion to Dismiss (Dkt. 18) concerning the argument that the University of Massachusetts is a necessary party. Defendant Carnegie Institution of Washington shall file its reply brief 14 days thereafter. As part of this briefing, the parties should also address the following two questions: (1) If this case must be dismissed because the University of Massachusetts is necessary party, may Plaintiff bring this action in any other court of competent jurisdiction; and (2) if not, does this result raise due process concerns? *See Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1332-35 (Fed. Cir. 2004) (Newman, J. additional views). Plaintiff's Motion for Jurisdictional Discovery (Dkt. 30) is GRANTED IN PART AND DENIED IN PART; Plaintiff's request for discovery regarding personal jurisdiction is GRANTED BUT STAYED, and Plaintiff's request for discovery regarding any other matter is, at this time, DENIED. Plaintiff's Motion for a Rule 16 conference (Dkt. 33) is GRANTED; the Courtroom Deputy will contact counsel for the parties to arrange for a telephonic Rule 16 conference. Finally, the deadline for Plaintiff to file an amended complaint will be set during the Rule 16 conference.

IT IS SO ORDERED

DATED this 28th day of May, 2013.


/s/ Michael H. Simon
Michael H. Simon
United States District Judge