## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MUSSA ALI, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   13-2030 (RC) |
| | : | |
| v. | : | Re Document No.:   73 |
| | : | |
| CARNEGIE INSTITUTION OF | : | |
| WASHINGTON, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING CARNEGIE'S MOTION TO DISMISS

## I.  INTRODUCTION

The present action arises out of the Plaintiff's claim that he was erroneously omitted as an inventor on five U.S. patents co-owned by the Defendant, the Carnegie Institution of Washington ("Carnegie") and the University of Massachusetts ("UMass"), originally brought in the U.S. District Court for the District of Oregon.  The Oregon court transferred the action to this Court pursuant to 28 U.S.C. § 1406(a).  Carnegie now moves to dismiss the Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(7), for failure to join a necessary party, or in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court grants Carnegie's motion to dismiss under Rule 12(b)(7).

## II.  FACTUAL BACKGROUND

Plaintiff Mussa Ali seeks, pursuant to 35 U.S.C. § 256 ("§ 256"), to correct the inventorship on five U.S. patents.[1]  Am. Compl. ¶ 1, ECF No. 4.  Carnegie and UMass are co-

---

[1]      U.S. Patent Nos. 6,506,559, 7,538,095, 7,560,438, 7,622,633, and 8,283,329.  *See* Am. Compl. ¶ 3, ECF No. 4.

owners, by assignment, of the patents at issue. *Id.* ¶¶ 3–4. The patents were allegedly issued as

a result of the collaboration between Dr. Andrew Fire and Dr. Craig C. Mello, the two lead

inventors of the laboratories of Carnegie and UMass, respectively. *See* Def.'s Mot. Dismiss 4,

ECF No. 73-1. The patents claim methods of inhibiting the expression of a particular gene in a

cell through the introduction of a double stranded ribonucleic acid ("RNA") molecule. Am.

Compl. ¶ 19. As a result of the discovery of this process, called RNA interference ("RNAi"), the

two lead inventors were awarded the Nobel Prize in Medicine in 2006. *See* Def.'s Mot. Dismiss

1.

　　　　The Plaintiff alleges that he made a critical contribution to the discovery of RNAi, which

is central to the claims in each of the patents, while working at UMass in Dr. Mello's laboratory,

and that Dr. Mello then shared his discovery with Dr. Fire. *See* Am. Compl. ¶¶ 8–20; *see also*

Pl.'s Opp'n Mot. 3, ECF No. 75. The Plaintiff subsequently approached Carnegie and UMass on

numerous occasions seeking to be named a co-inventor. *Id.* When those attempts failed, the

Plaintiff filed his original complaint and his Amended Complaint against Carnegie and UMass in

the U.S. District Court for the District of Oregon in September and December 2012, respectively.

*See generally* Compl., ECF No. 1; Am. Compl., ECF No. 4.

　　　　In his Amended Complaint, the Plaintiff asserted a claim to be named a co-inventor of the

patents at issue under § 256 and two alternative claims for damages for the revenue derived from

the patents, proceeds he alleges he is owed as a result of his role in the discovery of RNAi. *See*

Am. Compl. Counts 1, 2, and Alternative Count 2. Ali's alternative counts are titled "Legal

Damages." In Count 2 for Legal Damages, Ali alleges that "[o]n information and belief, during

the time of Ali's work at [U]Mass, [U]Mass had a policy that all [U]Mass employees making

inventions assigned, or had an obligation to assign, those inventions and all rights thereto, to

[U]Mass.  In consideration of that assignment, [U]Mass would pay the co-inventors a percentage of all revenue realized by [U]Mass through exploitation of that invention, including licensing, to be shared equally between investors."  Am. Compl. ¶ 30.  Ali further alleges that he "is entitled to a portion of all proceeds realized by [U]Mass as a consequence of any sale, licensing, enforcement or threatened enforcement of any and all of the Patents . . . ."  *Id.* ¶ 31.  In Alternative Count 2, Ali alleges that "[o]n information and belief, [U]Mass and Carnegie have secured substantial fees by reason of selling, licensing, or otherwise transferring their rights in and to the Patents to third parties," and that as such, "Ali is entitled to recover from [U]Mass and Carnegie a portion of moneys they have secured by reason of selling, licensing, or otherwise transferring their rights in and to the Patents to third parties, as a reasonable measure of the moneys Ali would have been entitled to recover if properly named as a co-inventor from the filing date."  *See* Am. Compl. ¶¶ 35–36.

In two separate sets of opinions and orders, the District Court of Oregon first dismissed UMass from the case on the basis of sovereign immunity and then ruled that the court lacked personal jurisdiction over Carnegie.  *See* Op. & Order, ECF No. 41; Op. & Order, ECF No. 66. After the Oregon court transferred the case *sua sponte* to this Court pursuant to 28 U.S.C. § 1406(a), the Defendant moved to dismiss the case for failure to join a necessary party— UMass—or, in the alternative to dismiss or strike the Plaintiff's two alternative claims for damages.  *See* Def.'s Mot. Dismiss 1–3.[2]  Because the Court finds that UMass is a necessary party that must, but cannot be joined, and that the action cannot "in equity and good conscience"

---

[2]    Carnegie also moved to dismiss under Federal Rule of Civil Procedure 12(b)(7) while this action was pending before the Oregon court.  *See* ECF No. 19.  But the Oregon court deferred ruling on that motion because of the impending transfer to this Court.  *See* Op. & Order 25, ECF No. 66.

continue absent UMass, the Court will grant Carnegie's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7).

## III. ANALYSIS

Carnegie first argues that the case should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(7) because UMass must, but cannot, be joined.  Specifically, Carnegie contends that UMass is a required party under Rule 19(a), but that UMass's sovereign immunity precludes its joinder, effectively barring the Plaintiff's claims.  Thus, according to the Defendant, the complaint must be dismissed under Rule 19(b) because the case cannot proceed "in equity and good conscience" in UMass's absence.  Plaintiff meanwhile argues that UMass is not a necessary party under Rule 19(a), but that even if it were, it is not required to be joined under Rule 19(b).[3]  The Court finds that UMass is a necessary party under Rule 19(a) and required to be joined under Rule 19(b), and as such, the case must be dismissed for failure to join UMass.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(7) provides for the dismissal of a complaint for "failure to join a party under Rule 19."  FED. R. CIV. P. 12(b)(7).  Dismissal under Rule 12(b)(7) is "warranted only when the defect is serious and cannot be cured."  *Direct Supply, Inc. v. Specialty Hospitals of America, LLC*, 878 F. Supp. 2d 13, 23 (D.D.C. 2012) (citations omitted).  For the purposes of a Rule 12(b)(7) motion, the court must accept the complaint's allegations as true, and may also consider matters outside the pleadings when determining whether Rule 19 requires that a party be joined.  *Id*.  The burden is on the defendant seeking dismissal for failure

---

[3]      Prior versions of Federal Rule of Civil Procedure 19 used the word "indispensable" in 19(b).  In 2007, that word was "discarded as redundant."  *See* FED. R. CIV. P. 19 advisory committee's note; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 856 (2008) ("[T]he word 'indispensable,' which had remained as a remnant of the pre-1966 Rule, is altogether deleted from the current text.  Though the word 'indispensable' had a lesser place in the 1966 Rule, it still had the latent potential to mislead.").

to name an absent person to show "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citadel Inv. Group, L.L.C. v. Citadel Capital Co.,* 699 F. Supp. 2d 303, 317 (D.D.C. 2010) (citations omitted).

Federal Rule of Civil Procedure 19 establishes a three-step procedure for determining whether an action must be dismissed because of the absence of a party required for a just adjudication: the court must determine (1) whether the absent party is "required" for the litigation according to the factors enumerated in Rule 19(a); (2) whether the required party can be joined; and (3) if joinder is not feasible, whether the action can nevertheless proceed in "equity and good conscience" under Rule 19(b). *See OAO Healthcare Solutions, Inc. v. Nat'l Alliance of Postal & Fed. Emps.*, 394 F. Supp. 2d 16, 19 (D.D.C. 2005); *see also Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995) (citing FED. R. CIV. P. 19). Multiple factors bear on the decision whether to proceed without a required person, such that the decision "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 863 (2008) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968)). With these principles in mind, the Court now turns to whether the case should be dismissed under Rule 19's three-step test.

### B. UMass is a Required Party Under Rule 19(a)

Under the first step in the Rule 19 analysis, the Court must determine whether UMass is a required party in the instant action. Pursuant to Rule 19(a), a party is to be joined if feasible if (1) the court cannot accord complete relief among existing parties; (2) the party's absence may, as a practical matter, impair or impede that party's ability to protect its interest; or (3) the party's

absence may subject the existing parties to substantial risk of incurring multiple or otherwise inconsistent obligations.  *See* FED. R. CIV. P. 19(a)(1).

Due to UMass's ownership interest in the patents whose inventorship the Plaintiff now challenges, the Court finds that UMass is a required party that must be joined if feasible.  UMass and Carnegie are co-owners of the patents.  *See* Am. Compl. ¶¶ 3–4.  UMass's ability to protect its interests in the patents could be impaired or impeded in its absence.  While there is no per se rule that patent owners are required parties in a suit challenging inventorship, the Federal Circuit has commented that there are several cases that "strongly support the conclusion that patent owners are required to be joined if feasible under Rule 19(a)," even though those cases "deal with standing to bring suit, not with indispensability under Rule 19(b)." *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. ("Univ. of Utah")*, 734 F.3d 1315, 1326 (Fed. Cir. 2013);  *see also Delano Farms Co. v. California Table Grape Com'n*, 655 F.3d 1337, 1342 (Fed. Cir. 2011) ("It is well established that a patentee is a necessary party to an action on the patent, whether it be a coercive action or a declaratory judgment suit."); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006) ("For the same policy reasons that a patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee.");  *Berry Floor USA, Inc. v. Faus Group, Inc.*, No. 08-0044, 2008 WL 4610313, at *3 (E.D. Wisc. Oct. 15, 2008) ("A patent owner should be viewed as a necessary party if it retains 'any interest' in the patent.") (citing *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 393 (D. Del. 1989)).

As to the ability to accord complete relief absent UMass, Carnegie contends that the Court cannot accord complete relief among the existing parties because Carnegie would not be under any obligation to compensate the Plaintiff for his damages claims, as there is no

contractual agreement between Carnegie and the Plaintiff.  Financial compensation, however, is

not the only relief that the Plaintiff requests: in the first count of his Amended Complaint, the

Plaintiff seeks a correction of inventorship pursuant to § 256.  Am. Compl. Count 1.  If the

Plaintiff were to succeed on this claim, "an order from the district court to the Director of the

[United States Patent and Trademark Office] to issue a certificate naming [the Plaintiff] as an

inventor," *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1359 (Fed. Cir. 2001), would provide the

Plaintiff with complete redress as to Count I.

This finding however, does not preclude the Court from finding that UMass is still

required under Rule 19(a).  *See Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d

Cir. 1996) ("Notwithstanding a determination of complete relief, a party may still be [required]

under subsection [(a)(1)(B)] of the rule.").  Although complete relief could be accorded—at least

with respect to the Plaintiff's claim for correction of inventorship—Plaintiff also seeks damages

from UMass, and UMass's financial interests would be highly prejudiced by Carnegie litigating a

case in its absence—especially if, as Ali alleges, he had a quasi-contractual relationship with

UMass wherein he was obligated to assign any "inventions and all rights thereto" to UMass in

exchange for a percentage of any revenue realized by UMass.  *See* Am. Compl. ¶¶ 30, 31.

Because the "[e]valuation of the first Rule 19(b) factor overlaps considerably with the Rule 19(a)

analysis," the Court will address the prejudice faced by UMass more fully in its analysis of

whether the case should proceed under Rule 19(b).  *Capitol Medical Ctr., LLC v. Amerigroup

Maryland, Inc.*, 677 F. Supp. 2d 188, 194 n. 9 (D.D.C. 2010); *see also Kickapoo*, 43 F.3d at 1497

n.9 ("The inquiry as to prejudice under Rule 19(b) is the same as the inquiry under Rule

19[(a)(1)(B)(i)] regarding whether continuing the action will impair the absent party's ability to

protect its interest.").  But for purposes of Rule 19(a), the Court finds that UMass is a necessary

party because it is a co-owner of the patents, and its interests would be highly prejudiced in its absence, even if the Court could afford partial relief to Plaintiff as to inventorship. Accordingly, the Court finds that UMass is a necessary party, and next turns to whether UMass can be joined, and if not, whether the action can proceed in its absence.[4]

### C. UMass Cannot Be Joined

The second step under the Rule 19 analysis requires the Court to determine whether UMass, a required party, can be joined. While this case was pending before the District Court of Oregon, the Oregon court dismissed UMass from the case after finding that UMass was entitled to sovereign immunity under the Eleventh Amendment. *See* Op. & Order 10, ECF No. 41. There is vast case law support for the proposition that state universities, like UMass, are arms of the state entitled to Eleventh Amendment immunity from suit in federal court.[5] Although Ali preserves his arguments on this issue, he does not re-argue his points before this Court. Thus, the Court does not revisit the Oregon court's conclusion that UMass is entitled to sovereign immunity, and finds that UMass cannot be joined as a party in this case as a result.

### D. The Action Cannot Proceed Without UMass

The third and final step in the Rule 19 analysis is whether "in equity and good conscience" the action should proceed in the absence of UMass or whether it should be dismissed. FED. R. CIV. P. 19(b). The nonexclusive factors for the court to consider include:

---

[4]        The Federal Circuit has further noted that "when a necessary patent owner is not joined, even when Rule 19(a) is satisfied, the court must still perform the inquiry under Rule 19(b) to determine whether that owner is indispensable." *See Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1326 (Fed. Cir. 2013) (citing *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1363 (Fed. Cir. 2010)).

[5]        *See, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 328–329 (5th Cir. 2013); *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82–83 (2d Cir. 2004); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968–69 (8th Cir. 2000); *accord Bennett v. U.S. Chess Fed'n*, 468 F. Supp. 2d 79, 85 (D.D.C. 2006).

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).  These four factors are not rigid but rather "guides to the overarching 'equity and good conscience' determination." *Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274, 1279 n.11 (D.C. Cir. 1983).  Courts of appeal review a district court's determination under Rule 19(b) for abuse of discretion.  *See Kickapoo*, 43 F.3d at 1495.  Rule 19(b) "calls for a pragmatic decision based on practical considerations in the context of particular litigation." *Id.*  "In that regard, the court has acknowledged that the district court has substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward." *Id.*  (citation omitted).  And "[s]ince joinder is an issue not unique to patent law," the law of the regional circuit, in this case the D.C. Circuit, applies.  *A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010); *see also Univ. of Utah*, 734 F.3d at 1320 ("Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law.").

In the D.C. Circuit, a party's sovereign immunity is pivotal in the Rule 19 analysis.  In *Kickapoo*, the court explained that "there is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests 'compelling by themselves.'" 43 F.3d at 1496 (quoting *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 n.13 (D.C. Cir. 1986)).  Specifically, the *Kickapoo* court elaborated that "notwithstanding the discretion generally accorded to the district court to consider which factors to weigh and how heavily to emphasize certain considerations, the district court [i]s confronted with a more circumscribed inquiry when

it assesse[s]" whether an action could "in equity and good conscience" proceed in the absence of a party that is both necessary to and immune from the lawsuit. *Id.* at 1497 (citations omitted). Thus, in the D.C. Circuit, while the balancing of the Rule 19(b) factors is relevant and important, sovereign immunity reigns supreme in the analysis. *See also* CHARLES ALAN WRIGHT & ARTHUR MILLER, ET AL., 7 FED. PRAC. & PROC. CIV. § 1617 (3d ed.) ("No doubt because of the sovereign-immunity concept, the application of Rule 19 in cases involving the government reflects a heavy emphasis on protecting its interests.").

This position was confirmed by the Supreme Court in *Republic of Philippines v. Pimentel,* 553 U.S. 851 (2008). In *Pimentel*, an interpleader action, the district court dismissed the Republic of the Philippines and the Philippine Presidential Commission of Good Governance ("Commission") from the case on sovereign immunity grounds. *Id.* at 855. However, the district court allowed the case to proceed in their absence. The Republic and the Commission appealed, arguing that under Rule 19, the action should not have been allowed to continue. *Id.* The Supreme Court found that the district court and Court of Appeals had failed to give "full effect to sovereign immunity" in allowing the case to proceed, and reversed, holding that "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action *must* be ordered where there is a potential for injury to the interests of the absent sovereign." *Id.* at 867 (emphasis added). As the Court of Federal Claims recently explained, *Pimentel* "illustrates that sovereign immunity often will be compelling itself in swaying the Rule 19(b) analysis. *Pimentel* stands for the proposition that where a sovereign party should be joined in an action, but cannot be owing to sovereign immunity, the entire case must be dismissed if there is the potential for the interests of the sovereign to be injured." *Klamath Tribe Claims Committee v. US*, 106 Fed. Cl. 87, 96 (Fed. Cl. 2012), *aff'd*, 541 F. App'x 974 (Fed. Cir. 2013).

In light of those principles, the Court now turns to analyze the Rule 19(b) factors against the backdrop of UMass's sovereign immunity.

### 1. *Carnegie and UMass will be prejudiced by UMass's absence*

The Court finds that, despite Plaintiff's arguments to the contrary, Carnegie and UMass will be prejudiced by UMass's absence. Both Carnegie and UMass are currently co-owners of the patents, and the addition of the Plaintiff as a co-inventor would change both their ownership rights. Though Carnegie's interest in protecting the inventorship status of the patents aligns with UMass's, UMass's relationship with Plaintiff is much more central to the case than is Carnegie's. First, all the purported inventorship activity occurred while Plaintiff was employed at UMass, whereas Plaintiff was never employed by Carnegie. *See* Am. Compl. ¶¶ 8–18 (describing Plaintiff's relationship with Dr. Mello at UMass, and Ali being hired "pursuant to a Pew grant to [U]Mass and Mello's laboratory"). Second, Plaintiff alleges that he has a contractual, or at least quasi-contractual relationship with UMass that he does not have with Carnegie. Specifically, he alleges that UMass "had a policy that all [U]Mass employees making inventions assigned, or had an obligation to assign, those inventions and all rights thereto, to [U]Mass. In consideration of that assignment, [U]Mass would pay the co-inventors a percentage of all revenue realized by [U]Mass through exploitation of that invention, including licensing, to be shared equally between inventors." Am. Compl. ¶ 30. Meanwhile, Plaintiff alleges no relationship with Carnegie in which Plaintiff would be able to recover financial compensation from Carnegie; the Oregon court acknowledged just as much. *See* Op. & Order 6, ECF No. 66 ("Therefore, if Ali is named a co-inventor of some or all of the patents-in-suit and he is entitled to compensation from UMass, Ali cannot receive that compensation in this suit unless UMass is a party-defendant."). In light of this, it would be highly prejudicial to Carnegie to force it to vigorously defend a suit and pay

attorney's fees in a case that involves only a potential financial loss to UMass—a party that cannot be joined.  Indeed, Carnegie has a disincentive to vigorously litigate the case to the bitter end given that only UMass's financial liability is at stake.  Carnegie may even be incentivized to settle the case early as to the § 256 inventorship claim to eliminate *its own* potential liability— which would highly prejudice the absent UMass's ownership interest in the patents.

This is the scenario *Pimentel* cautioned against: according "insufficient weight to the likely prejudice" to the sovereign's interest should the action proceed in its absence, especially where, as here, the sovereign's claims are not frivolous.  553 U.S. at 869.  If Ali is added as a co-inventor, and if he does have the contractual relationship with UMass he alleges he has, then UMass will likely have to share part of the revenues from the patents-in-suit with him.  And such a determination would injure the financial interests of the absent sovereign.  Given the weight the Court must accord to UMass's sovereign immunity under D.C. Circuit and Supreme Court precedent, this factor weighs heavily in favor of dismissing this action because it cannot proceed "in equity or good conscience" without UMass.[6]

---

[6]     The Plaintiff argues that *Pimentel*, *Wichita*, and *Kickapoo* are inapposite because those cases dealt with foreign and tribal sovereign immunity, respectively, whereas UMass is protected by state sovereign immunity. *See* Pl.'s Opp'n Mot. 11–12.  However, in reaching its holding in *Pimentel* that "[a] case may not proceed when a required-entity sovereign is not amenable to suit," the Supreme Court considered "authorities involving the intersection of joinder and the governmental immunity of the United States."  *See Pimentel*, 553 U.S. at 866–67 (citing *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 373–75 (1945) (dismissing a suit where the Under Secretary of the Navy was sued in his official capacity and was required to be joined, but could not be joined because the Government withheld consent to be sued) & *Minnesota v. United States*, 305 U.S. 382, 386–88 (1939) (dismissing the action because the United States was a party required to be joined because it was the owner of the land in question but had not consented to suit)).  Thus, the central inquiry is *immunity* generally—and it is less meaningful whether that immunity stems from a party's status as a foreign sovereign, state sovereign, or tribe.  *Accord Klamath Tribe Claims Committee v. US*, 106 Fed. Cl. 87, 96 (Fed. Cl. 2012), *aff'd*, 541 F. App'x 974 (Fed. Cir. 2013) (explaining that the *Pimentel* "rationale applies to domestic sovereigns, *i.e.*, States and Indian nations, as much as it does to foreign sovereigns, *e.g.*, the Philippines"); *Diaz v. Glen Plaid, LLC*, No. 7:13-cv-853(TMP), 2013 WL

The Court does not find Plaintiff's analogies to *Univ. of Utah* and *Dainippon Screen Mfg. Co., Ltd v. CFMT, Inc.,* 142 F.3d 1266 (Fed. Cir. 1998), persuasive.  While Carnegie and UMass's ownership interests *overlap*, they are not *identical*, as they were in *Univ. of Utah* or *Dainippon*.  In *Univ. of Utah*, the Federal Circuit affirmed the district court's finding that UMass's interest was adequately protected by defendants because UMass had entered into a settlement agreement wherein it "handed sole and exclusive control of this suit" to one of the named defendants in the action.  734 F.3d at 1327–1328.  Indeed, the Federal Circuit acknowledged that this fact might be dispositive to the identity of interests inquiry.  *Id.* at 1328 ("[I]f an unforeseeable conflict arises which negates UMass's assignment to Alnylam of sole and exclusive control over this lawsuit, UMass may be free to renew this motion.").[7]  And in *Dainippon*, the identity of interests arose out of a parent-subsidiary relationship—an identical interest, then, not just an overlapping one.  *See* 142 F.3d at 1271, 1272 n.4 (finding that the subsidiary company's interests were adequately protected by the parent, because the parent

_____

5603944, at *7 (N.D. Ala. Oct. 11, 2013) ("While the University of Alabama is not a *foreign* sovereign, it is nonetheless clothed with the sovereign immunity of the State of Alabama, making its status comparable to that of the Philippines and the Commission, at least for Rule 19(b) purposes.") (emphasis in original).  The Court, then, finds *Pimentel* controlling.

And while Plaintiff is correct that Carnegie and UMass's interests are not in conflict, as they were between the parties in *Wichita* (several Tribes) & *Kickapoo* (a Tribe and a State), nor are their interests identically aligned, as set forth above, making Plaintiff's attempts to distinguish the cases unpersuasive.  Moreover, because the D.C. Circuit has made sovereign immunity a crucial factor in the Rule 19 context, this Court is bound to do the same.

[7]        *Univ. of Utah* is also distinguishable in two other important regards.  First, in that case, the court acknowledged that because the plaintiffs amended their complaint to name UMass officials, as opposed to UMass itself, there was no sovereign immunity issue.  *See Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1325 (Fed. Cir. 2013).  Second, because, as set forth above, the issue was procedural, the Federal Circuit applied First Circuit joinder law, which does not place as much weight on sovereign immunity as the D.C. Circuit does.  *See, e.g.*, Katherine Florey, *Making Sovereigns Indispensable: Pimentel and the Evolution of Rule* 19, 58 UCLA L. REV. 667, 683 n. 102, 686–687 (2011) (explaining that several Circuits, including the D.C. Circuit, "favor[] dismissal when the absent party is immune").

owned the subsidiary in its entirety and essentially created the subsidiary for the purpose of being an intellectual property holding company).  Such identity of interests between Carnegie and UMass is lacking here.

And while here, as in *Univ. of Utah* and *Dainippon*, legal counsel jointly represents Carnegie and UMass, the Court is not persuaded that this renders Carnegie adequately able to protect UMass's interest.  Rather, the Court finds persuasive Judge Moore's dissenting comment in *Univ. of Utah* that in *Dainippon*, where the court found the common counsel factor persuasive, the parties' interests were identical, not merely overlapping, because "the absent party was a wholly-owned subsidiary of the named party and was created by the named party to enforce the patents-in-suit."  *See Univ. of Utah*, 734 F.3d at 1332 (Moore, J., dissenting) (citing *Dainippon*, 142 F.3d at 1267–1268).  As such, the Court finds that Carnegie would not be able to adequately defend UMass's interest in this litigation, and would be unduly prejudiced by defending this case in UMass's absence.[8]  And UMass would be prejudiced by having a case to which it is so crucially linked, and upon which its financial interests depend, proceed in its absence.

---

[8]    Carnegie also argues that because UMass may assert sovereign immunity against third party subpoenas, Carnegie will be prejudicially limited in its access to relevant evidence and traditional discovery mechanisms.  *See* Def.'s Reply 11–13, ECF No. 76.  Although there is authority supporting that contention, the Defendant has misconstrued the effect that immunity has on a sovereign's obligation to respond to a subpoena.  While "Eleventh Amendment immunity entitles a state not only to protection from liability, but also from suit, including the burden of discovery, *as a party*, within the suit," *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (emphasis added), "Eleventh Amendment sovereign immunity does not protect *non-party* state entities from responding to [third-party] discovery requests."  *Arista Records LLC v. Does 1014*, No. 7:08cv205, 2008 WL 5350246, at *4 (W.D. Va. Dec. 22, 2008) (emphasis added); *see also In Re Mo. Dep't of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1078–79 (E.D. Cal. 2008) (concluding that "issuance and required compliance with a third-party subpoena by State custodians of records in an action in which the State is not a party" does not constitute "any suit in law or equity" within the meaning of the Eleventh Amendment, and thus that "the Eleventh Amendment does not apply to preclude discovery from a State agency").  The Eleventh

## 2.  There is no adequate alternative to dismissal

The second factor in the Rule 19(b) analysis includes the extent to which any prejudice could be lessened or avoided by relief or measures alternative to dismissal.  *See* FED. R. CIV. P. 19(b)(2).  "[T]his second factor calls the court's attention to the possibility of granting remedies other than those specifically requested that would not be merely partial or hollow but would minimize or eliminate any prejudicial effect of going forward without the absentees."  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., 7 FED. PRAC. & PROC. CIV. § 1608 (3d ed.).  Though the parties have not entirely briefed this issue, the Plaintiff has asked for leave to amend his complaint to name UMass officials as defendants.  *See* Pl.'s Opp'n Mot. 26–27 ("Ali has sought to reserve its right to file a Second Amended Complaint naming, as additional defendants, one or more UMass employees subject to this Court's jurisdiction.").  Though this alternative may be preferable to dismissal, as to Ali's claim for financial damages, there is no meaningful difference between naming UMass and naming state officials in their official capacities as defendants, given that doing so would only allow Ali to seek injunctive relief against the state officials under the doctrine of *Ex Parte Young*.  *Ex Parte Young*, 209 U.S. 123 (1908), allows a plaintiff to bring suit against a state official in his official capacity, but is limited to claims for prospective injunctive relief only, and generally does not allow a plaintiff to seek past financial compensation from a state government.  *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is

---

Amendment, therefore, does not completely shield UMass from certain non-party discovery requests.  *See* FED. R. CIV. P. 45, FED. R. CIV. P. 34(c).  As such, UMass's ability to participate in discovery would help assuage any prejudice faced by Carnegie in UMass's absence as a party—as to discovery.  But even still, under Rule 19(b), the Court is tasked with balancing the factors, and given the weight the Court must place on UMass's sovereign immunity, UMass's ability to participate in discovery does not outweigh the substantial prejudice it will incur if the case proceeds in its absence.

necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury.") (citations omitted).  Thus, Plaintiff's count for legal damages arising from his contractual relationship with UMass could not be brought against state officials in their official capacities.

As to Plaintiff's claim for correction of inventorship, it is not clear whether naming the UMass officials as defendants would be permissible, as there is no Supreme Court, Federal Circuit, or D.C. Circuit case that directly addresses whether suing state officials in their official capacities for correction of inventorship is permissible under *Ex Parte Young*.[9]  Given this uncertainty, and given that adding UMass officials in their official capacities as defendants would have no bearing on Plaintiff's damages claim, this factor weighs slightly in favor of dismissing *this Complaint*,[10] where only UMass and Carnegie are named defendants.

---

[9]       In *Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, the district court found that it had jurisdiction over the action against UMass state officials under *Ex Parte Young*.  881 F. Supp. 2d 151, 156 (D. Mass. 2012).  That decision was affirmed on other grounds by the Federal Circuit, with the Circuit explaining that it need not address the *Ex Parte Young* issue because, given that the case involved a suit *by a State against State officials*, and not "a suit *by citizens* against a State, there is no sovereign immunity issue here." *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1323 (Fed. Cir. 2013) (emphasis added).  In *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, Judge Newman, writing to express "additional views," "express[ed] no view as to whether *Young* offers a path to relief" on a correction of inventorship claim, but her opinion and analysis suggests that perhaps it does.  382 F.3d 1324, 1335 (Fed. Cir. 2004) (Newman, J.) (expressing "additional views").  This precise issue is neither briefed by the parties nor squarely presented in this case and the Court need not decide it now.  For purposes of this prong of the analysis, given that amending his complaint to name UMass officials *may or may not* allow Ali to pursue his correction of inventorship claim *only*, and definitively would not allow him to pursue financial damages, this prong still weighs slightly in favor of dismissal of *this Complaint*.

[10]       Plaintiff may seek leave to file a second amended complaint, per the Order contemporaneously issued with this Memorandum Opinion.

### 3. The Court can only enter a partial judgment in UMass's absence

With respect to the third Rule 19(b) factor, whether a judgment rendered in the party's absence will be adequate, "[t]his consideration promotes judicial economy by avoiding going forward with actions in which the court may end up rendering hollow or incomplete relief because of the inability to bind persons who could not be joined." *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., 7 FED. PRAC. & PROC. CIV. § 1608 (3d ed.). The court in *Univ. of Utah* found that an order directing the PTO to correct inventorship would be sufficient in the absence of UMass. *Univ. of Utah*, 734 F.3d at 1328; *see also* 35 U.S.C. § 256(b) ("The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly."); *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1554 (Fed. Cir. 1997) ("As noted, section 256 permits the Commissioner and the federal courts to correct erroneous listing of inventors in an issued patent."). Similarly, in this case, the Court can order the PTO to correct the inventorship of the patents at issue without UMass's presence.[11] Thus, the Plaintiff could potentially receive all the relief he requests as to his § 256 claim, even in UMass's absence.

However, the Plaintiff also asserts two claims in the alternative for damages for the royalties derived from the patents. As the District Court of Oregon pointed out prior to transferring this case, "Ali cannot receive that compensation in this suit unless UMass is a party-

---

[11]     The Court would, of course, have to give UMass notice pursuant to 35 U.S.C. § 256. *See* 35 U.S.C. § 256(b) ("The court before which such matter is called in question may order correction of the patent on notice and hearing *of all parties concerned* and the Director shall issue a certificate accordingly."). But that does not automatically mean that UMass is a party required to be joined under Rule 19(b). *See FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 650 (E.D. Mich. 1994)("[B]efore this court may correct the inventorship, [co-inventors] must be given notice of the action and an opportunity to testify on this issue, *even though they are not parties* to the action.") (citing *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989)) (emphasis added).

defendant." Op. & Order 6, ECF No. 66. Because UMass is a required party that cannot be joined, even if the Plaintiff were entitled to compensation from UMass as a result of being named a co-inventor of some or all of the patents-in-suit, he could not receive the financial relief he seeks from Carnegie. Thus, because the Court could award the Plaintiff part of the relief he seeks absent UMass, the third prong of the 19(b) analysis is inconclusive, as it weighs in part in favor of dismissal and in part in favor of going forward.

### 4. There may or may not be an alternative forum for Plaintiff's claims

The final 19(b) factor is also inconclusive but ultimately may be the least important of the four in the context of an immune party. "The fourth factor requires consideration of whether 'the plaintiff will have an adequate remedy if the action is dismissed,' which is different from whether the plaintiff can obtain precisely the same relief elsewhere." *Kickapoo*, 43 F.3d at 1499 (citation omitted). *See also id.* at n.12 ("The Advisory Committee on the Federal Rules of Civil Procedure, in its Note on the 1966 Revision of Rule 19, stated that 'the fourth factor, looking to the practical effects of a dismissal, indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could *sue effectively* in another forum where better joinder would be possible.'") (emphasis in original).

As the D.C. Circuit explained in *Wichita*, "[a]lthough we are sensitive to the problem of dismissing an action where there is no alternative forum, we think the result is less troublesome in this case than in some others. The dismissal of this suit is mandated by the policy of tribal immunity. This is not a case where some procedural defect such as venue precludes litigation of the case. Rather, the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." 788 F.2d at 777. The Court of Federal Claims has further elaborated that while the weight given to sovereign immunity "'does

not mean that balancing can be completely avoided simply because an absent person is immune

from suit,' it does mean that 'the plaintiff's inability to obtain relief in an alternative forum is not

as weighty a factor when the source of that inability is a public policy that immunizes the absent

party from suit.'"   *Klamath Tribe Claims Committee*, 106 Fed. Cl. at 95 (quoting *Davis ex rel.*

*Davis v. United States*, 343 F.3d 1282, 1293–94 (10th Cir. 2003)).

Here, it is unclear whether Plaintiff has another remedy available.  On the one hand, he

may be able to pursue state law contract or ownership claims against UMass in state court.  *See*

*Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Center*, 382 F.3d 1324, 1332 (Fed. Cir.

2004) ("Although the Federal Circuit has held that inventorship is determined under federal law,

state courts can apply federal law to issues properly before the state court.  Federal preemption of

causes arising under the Patent Act does not include matters of ownership or license.") (citations

omitted).  He may even be able to amend his complaint to seek injunctive relief against UMass

officials—though that too remains unclear, as set forth in note 9.  On the other hand, it is unclear

whether he can sue UMass in state court for damages,[12] and/or whether the statute of limitations

has run on his state law claims.[13]  Thus, this factor on its own neither favors dismissal nor

---

[12]     *See Alden v. Maine*, 527 U.S. 706, 754 (1999) ("In light of history, practice, precedent, and the structure of the Constitution, we hold that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation.").

[13]     The statute of limitations for breach of contract claims in Massachusetts is six years.  *See* MASS. GEN. LAWS 260 § 2 (West 1948).  The D.C. Circuit has found the running of the statute of limitations to be an important factor weighing against dismissal.  *See Park v. Didden*, 695 F.2d 626, 631 n. 13 (D.C. Cir. 1982) ("Even when a person fits Rule 19(a)'s description and therefore should be joined if feasible, expiration of the statute of limitations counts heavily against dismissal.").  However, that case did not involve sovereign immunity, and as set forth above, UMass's sovereign immunity is of paramount importance under D.C. Circuit joinder law.   Thus, even if the statute of limitations had run on Plaintiff's state law claims—an issue the Court need not and does not decide—it would not persuade the Court that dismissal was no longer warranted.

moving forward.  But as set forth in *Wichita* and *Klamath Tribe*, because of the weight given

sovereign immunity, this factor ultimately is subsidiary in the analysis.

*      *      *

In sum, then, the first two Rule 19(b) factors favor dismissal of Plaintiff's Amended

Complaint: UMass and Carnegie would be prejudiced by this case proceeding without UMass

because Carnegie cannot adequately represent UMass's interests, and the Court cannot fashion

adequate alternative relief on this Complaint in UMass's absence.  The final two Rule 19(b)

factors are inconclusive and favor neither dismissal nor going forward.  But because the Court

must accord significant weight to UMass's sovereign immunity under D.C. Circuit and Supreme

Court precedent, and the first two factors weigh in favor of dismissal of Plaintiff's Amended

Complaint, the Court finds that this action cannot proceed "in equity and good conscience"

without UMass.  As such, the Court grants Carnegie's motion to dismiss under Federal Rule of

Civil Procedure 12(b)(7).[14]

---

[14]     In the alternative, Carnegie asks the Court to dismiss the alternative counts for
legal damages in the complaint for failure to state a claim under Federal Rule of Civil Procedure
12(b)(6), or to strike the counts as redundant under Federal Rule of Civil Procedure 12(f).  Ali's
alternative counts are titled "Legal Damages."  Ali's Count 2 for Legal Damages is only alleged
against UMass.  UMass is no longer a party to this case, nor can it be, as set forth above.  As
such, this Count does not state a claim for relief, and would be dismissed even if the action were
not dismissed under Federal Rule of Civil Procedure 12(b)(7).
        In Alternative Count 2, Ali alleges that "[o]n information and belief, [U]Mass and
Carnegie have secured substantial fees by reason of selling, licensing, or otherwise transferring
their rights in and to the Patents to third parties," and that as such, "Ali is entitled to recover from
[U]Mass and Carnegie a portion of moneys they have secured by reason of selling, licensing, or
otherwise transferring their rights in and to the Patents to third parties, as a reasonable measure
of the moneys Ali would have been entitled to recover if properly named as a co-inventor from
the filing date."  *See* Am. Compl. ¶¶ 35–36.  The Court, much like the Oregon court, is unclear
under what theory the Plaintiff means to pursue this cause of action against Carnegie.  Though
titled a claim for "Legal Damages," this cause of action sounds in unjust enrichment, contract, or
tort.  Indeed, the Oregon court found that "[a]lthough it is not clear how Ali intends to pursue
these claims for legal damages, the Court construes Ali's claims as arising under contract law."

## IV. CONCLUSION

For the foregoing reasons, Carnegie's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(7) is GRANTED and Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 29, 2014                                        RUDOLPH CONTRERAS
                                                                       United States District Judge

---

*See* Op. & Order 5, ECF No. 66.  Accordingly, the Court would also dismiss this Count without prejudice, as it does not currently state a claim upon which relief can be granted.